# United States Court of Appeals for the Federal Circuit

---

**GENERAL ELECTRIC COMPANY,**
*Appellant,*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee,*

**AND**

**MITSUBISHI HEAVY INDUSTRIES, LTD.,**
**AND MITSUBISHI POWER SYSTEMS AMERICAS, INC.,**
*Intervenors.*

---

2010-1223

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-641.

---

ON PETITION FOR PANEL REHEARING

---

JAMES A. WORTH, Attorney, Office of General Counsel, United States International Trade Commission, of Washington, DC, filed a combined petition for rehearing and rehearing en banc for appellee. With him on the petition

were JAMES M. LYONS, General Counsel, and WAYNE W. HERRINGTON, Assistant General Counsel.

MARK G. DAVIS, Weil, Gotshal & Manges LLP, of Washington, DC, filed a response to the petition for appellant. With him on the response was ANISH R. DESAI.

_____

Before RADER, *Chief Judge,* NEWMAN AND LINN, *Circuit Judges.*

Order for the court filed by *Chief Judge* RADER. Dissent filed by *Circuit Judge* NEWMAN.

RADER, *Chief Judge.*

# O R D E R

A combined petition for panel rehearing and rehearing en banc was filed by the International Trade Commission (ITC). A response was invited by the panel and filed by General Electric Company. The petition for panel rehearing, response, and reply were considered by the panel that heard the appeal.

Upon consideration thereof,

IT IS ORDERED THAT:

(1) ITC's petition for panel rehearing is granted for the limited purpose of withdrawing Part III of the opinion. The panel offers no decision on the questions raised in Part III, which may arise in a future case.

(2) The previous opinion in this appeal issued February 29, 2012 and reported at *Gen. Elec. Co. v. Int'l Trade*

*Comm'n*, 670 F.3d 1206 (Fed. Cir. 2012), is withdrawn and replaced with the revised opinion accompanying this order.

(3) The petition for rehearing en banc has been circulated to the full court.

FOR THE COURT


July 6, 2012                         /s/ Jan Horbaly
      Date                           Jan Horbaly
                                     Clerk

# United States Court of Appeals for the Federal Circuit

---

**GENERAL ELECTRIC COMPANY,**
*Appellant,*

v.

**INTERNATIONAL TRADE COMMISSION,**
*Appellee,*

AND

**MITSUBISHI HEAVY INDUSTRIES, LTD.,**
AND **MITSUBISHI POWER SYSTEMS AMERICAS,
INC.,**
*Intervenors.*

---

2010-1223

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-641.

---

NEWMAN, *Circuit Judge*, dissenting from the panel action on rehearing.

In its now withdrawn opinion, the court criticized the action of the International Trade Commission whereby the Commission removed the issues of infringement and validity of the '985 patent from judicial review. These issues had been fully investigated, fully tried, and finally decided in the

ITC's Final Initial Determination and were not reviewed by the full Commission, thus becoming a final Commission decision and appealable to the Federal Circuit. Nonetheless, the court now grants the Commission's request and ratifies the Commission's authority to negate the finality of these final decisions, thereby forestalling judicial review and impeding the expeditious resolution of ITC proceedings, as required by statute and as the Commission represents to the public.

The '985 patent is one of several patents for whose infringement General Electric sought remedy in the ITC in accordance with 19 U.S.C. §1337. The Commission unilaterally, without prior notice, prevented completion of the Section 337 action, even as the Commission issued the Final Determination that is the subject of this appeal. My colleagues now grant the Commission's request on rehearing, and withdraw the court's expression of concern for the Commission's short-cut of its statutory obligations. I must, respectfully, dissent.

### *Judicial review of ITC decisions*

The validity and infringement of the '985 patent were fully litigated and decided in the proceedings before the administrative law judge, whose Final Initial Determination included extensive findings of fact and conclusions of law. Section 337 provides that the final decision of the ALJ is subject to judicial review unless superseded by a decision of the full Commission. My colleagues now ratify the Commission's bar of judicial review of issues decided by the ALJ, by declining to "take a position" on such issues after noticing them for Commission review. The result is that this action, whose complaint was filed in 2008, cannot receive full judicial review and final resolution. We thus remand to the Commission for undefined further proceedings, for which one

may be confident only of further delay, cost, and burden to the parties, the Commission, and this court.

Such piecemeal actions are contrary to the purposes of Section 337 to provide expeditious resolution of charges of unfair competition in importation. Piecemeal litigation is also disfavored as a matter of national policy. As the Court stated in *McLish v. Roff*, 141 U.S. 661, 665-66 (1891):

> From the very foundation of our judicial system the object and policy of the acts of congress in relation to appeals and writs of error . . . have been to save the expense and delays of repeated appeals in the same suit, and to have the whole case and every matter in controversy in it decided in a single appeal.

This policy is manifested in appellate practice requiring finality of all contested issues, and the limited procedures for partial appeal. *See Cobbledick v. United States*, 309 U.S. 323, 325 (1940):

> Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. Thereby is avoided the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. To be effective, judicial administration must not be leaden-footed. Its momentum would be arrested by permitting separate reviews of the component elements in a unified cause.

Here, all of the contested issues concerning the '985 patent, although tried and decided by the ALJ, were not permitted to be presented to this court when relevant to final decision. This procedure fails the requirement that Section 337 actions be expeditiously completed. And since, by 28 U.S.C. §1659, the respondent is entitled to a stay of the district court proceedings, as here occurred in *General Electric Co. v. Mitsubishi Heavy Industries, Ltd.*, No. 2:09-cv-00229, (S.D. Tex.), Dkt. No. 10 (Oct. 5, 2009) (stay of proceedings), a patent holder with a presumptively valid patent is barred from independent resolution and potential remedy in the federal courts. The Commission's removal from appeal of the finally decided issues of validity and infringement is a negation of the Commission's responsibility to provide expeditious resolution of importation issues involving intellectual property rights.

On investigation by the Commission and after full trial, the ALJ held that the Mitsubishi turbines infringe the '985 patent, that the '985 patent is valid, and that inequitable conduct had not been shown. The *Notice of Commission Determination to Review a Final Initial Determination of the Administrative Law Judge* 74 Fed. Reg. 52,975 (Oct. 15, 2009) stated that the Final Initial Determination would be reviewed by the full Commission except for the issues of importation and the intent element of inequitable conduct. That is the posture in which full Commission received the ALJ's decision for review.

As elaborated by 19 C.F.R. §210.42, the ALJ's initial determination is subject to review by the full Commission, and becomes the Commission's determination unless the Commission orders review:

19 C.F.R. §210.42 *Initial determinations.*
. . .

(h)(2) An initial determination under §210.42(a)(1)(i) shall become the determination of the Commission 60 days after the date of service of the initial determination, unless the Commission within 60 days after the date of such service shall have ordered review of the initial determination or certain issues therein or by order has changed the effective date of the initial determination.

The Commission's final determination is appealable to the Federal Circuit, as set forth in §1337(c):

19 U.S.C. §1337(c) *Determinations; review.*

. . . . Any person adversely affected by a final determination of the Commission under subsection (d), (e), (f), or (g) of this section may appeal such determination, within 60 days after the determination becomes final, to the United States Court of Appeals for the Federal Circuit for review in accordance with chapter 7 of Title 5.

In the Commission the "presiding employee" is the ALJ, and the ALJ's decision "becomes the decision of the agency" unless it is superseded by an agency decision:

5 U.S.C. §557 *Initial decisions; conclusiveness; review by agency; submissions by parties; contents of decisions; record.*
. . .
(b) . . . When the presiding employee makes an initial decision, that decision then becomes the decision of the agency without further proceedings unless there is an appeal to, or review on motion of, the agency within time provided by rule. On appeal from or review of the initial decision, the agency has all the

powers which it would have in making the initial de-
cision except as it may limit the issues on notice or by
rule.

The Commission does not dispute the applicability of these
provisions to its proceedings. Yet the Commission insists
that it can remove finally decided issues from judicial review
simply by stating that the full Commission "takes no posi-
tion" on issues that were finally decided by the ALJ. That
position is in conspicuous tension with the statutes and
regulations, and with unambiguous precedent. In *Darby v.
Cisneros*, 509 U.S. 137, 146 (1993) the Court explained that
"[w]hen an aggrieved party has exhausted all administrative
remedies expressly prescribed by statute or agency rule, the
agency action is 'final for the purposes of this section' and
therefore 'subject to judicial review.'" (quoting 5 U.S.C. §704).
No provision of Section 337 or the Administrative Procedure
Act authorizes the ITC to bar the routine judicial review of
issues that were fully tried and finally decided by the ALJ
and not reviewed by the full Commission.

### *Expeditious proceedings in the ITC*

Expeditious adjudication is the hallmark of proceedings
of the International Trade Commission. This goal pervades
the statute, which requires the Commission to establish
target completion dates:

> 19 U.S.C. §1337(b) *Investigation of violations by
> Commission*
>
> (b)(1) . . . The Commission shall conclude any such
> investigation and make its determination under this
> section at the earliest practicable time after the date
> of publication of notice of such investigation. To
> promote expeditious adjudication, the Commission

shall, within 45 days after an investigation is initi-
ated, establish a target date for its final determina-
tion.

Although an earlier statute set a deadline of one year (18
months for complicated cases) the 1994 replacement with the
phrase "the earliest practicable time" was accompanied by
the statement that "the Committee expects that, given its
experience in administering the law under the deadlines in
current law, the ITC will nonetheless normally complete its
investigations in approximately the same amount of time as
is currently the practice." S. Rep. 103-412, at 119 (1994).

Similarly, the legislative record for the 2008 regulatory
amendments to the Commission's Rules describes the
amendments as "procedural rules" promulgated "in order to
increase the efficiency of its section 337 investigations."
*Rules of General Application and Adjudication and Enforce-
ment*, 73 Fed. Reg. 38,316, 38,316 (July 7, 2008). The discus-
sion and public comment concerned the Commission's
proposals to ease the deadlines for completing its proceed-
ings; commentators stated their concern about loss of the
expedition on which they relied for Section 337 actions. The
ITC Trial Lawyers Association stressed the advantages of
"speedy adjudication":

[O]ne of the great advantages of Section 337 proceed-
ings is their speedy adjudication. The role that the
Commission and Section 337 have achieved as one of
the key forums for protection of valuable U.S. intel-
lectual property rights rests on the speed and high
quality of its adjudicatory process.

Comment to Notice of Proposed Rulemaking, ITC Doc. No.
296282, at 6 (Mar. 31, 2008). The Intellectual Property
Owners Association also commented on the Commission's

proposed authority for enlargement of target dates, stating that:

> IPO members place much value in the Commission's prompt and effective resolution of Section 337 investigations 'at the earliest practicable time.' (quoting 19 U.S.C. §1337(b)).

Comment to Notice of Proposed Rulemaking, ITC Doc. No. 296810, at 2 (Mar. 31, 2008). The Commission's response was to reassure the public that it expected to continue to meet the existing deadlines in most investigations. No mention was made of the possibility of eliminating finality and precluding judicial review of finally decided issues. The regulation on which the Commission now relies to preclude judicial review is as follows, with emphasis added to the 2008 amendment:

> 19 C.F.R. §210.45  *Review of initial determinations on matters other than temporary relief.*
> . . .
> (c) *Determination on review.* On review, the Commission may affirm, reverse, modify, set aside or remand for further proceedings, in whole or in part, the initial determination of the administrative law judge. *In addition, the Commission may take no position on specific issues or portions of the initial determination of the administrative law judge.* The Commission also may make any findings or conclusions that in its judgment are proper based on the record in the proceeding. If the Commission's determination on review terminates the investigation in its entirety, a notice will be published in the Federal Register.

The concerned communities were not told that the Commission intended, by this amendment, to authorize itself to

remove finally decided issues from access to the judicial review provided in 19 U.S.C. §1337(c). Such a bombshell would surely have occasioned comment.

The consequences of this practice are manifest in this case, for all contested issues concerning the '985 patent were investigated by the Commission, tried to the ALJ, and decided by Final Initial Determination, deciding all of the issues raised by General Electric and Mitsubishi and the Commission, in the complaint and in defense. *In the Matter of Certain Variable Speed Wind Turbines and Components Thereof*, Inv. No. 337-TA-641, USITC Pub. 4202 (Aug. 7, 2009), 2010 WL 5176683. On appeal, this court reverses the Commission's ruling on the domestic industry requirement for the '985 patent, but by the Commission's procedure the final rulings on validity and infringement are not included in this appeal. Thus this proceeding, initiated on March 31, 2008, must be returned to the Commission, defeating the requirement of §1337(b)(1) that "[t]he Commission shall conclude any such investigation and make its determination under this section at the earliest practicable time."

The Commission states that this anomalous procedure was approved by this court in *Beloit Corp. v. Valmet Oy*, 742 F.2d 1421 (Fed. Cir. 1984). That is incorrect. In *Beloit* the prevailing party before the Commission sought to raise certain issues on appeal to the Federal Circuit, and this court held that the prevailing party has no standing to appeal, see *American Telephone & Telegraph Co. v. Int'l Trade Comm'n*, 626 F.2d 841, 842 (CCPA 1980) ("Since the ITC determined that there was no §1337 violation by Bell, Bell is without standing to appeal."). The court also observed that the issues sought to be appealed had not been reviewed by the full Commission. That special situation did not and could not negate the finality of final ALJ determinations, and could not deprive the losing party of final and full judicial review. The

rhetoric in *Beloit* does not support the weight with which the Commission endows it.

Issues decided by Final Initial Determination and not reviewed by the full Commission are determinations of the Commission in accordance with 19 C.F.R. §210.42(h), and on appeal are entitled to judicial review when relevant to final resolution. No statutory provision contemplates, or hints at, excluding fully litigated and finally decided dispositive issues from the judicial review established in 19 U.S.C. §1337(c), 19 C.F.R. §210.42(h), 19 C.F.R. §210.45(c), the Administrative Procedure Act, and other provisions governing ITC proceedings. *See Warner Bros., Inc. v. Int'l Trade Comm'n*, 787 F.2d 562, 564 (Fed. Cir. 1986) (the Commission cannot preclude "meaningful judicial review"). The disservice to the parties and the public looms large, and the benefit to the Commission is elusive.

### *The Federal Circuit's obligation*

Instead of simply ratifying this aberrant procedure and accepting its consequences, at a minimum the court should take the case *en banc* and obtain input from the communities that Section 337 is designed to serve. The delays in Commission finality and judicial resolution are manifest in this case. Instead of setting the inquiry aside for "a later case," the issue of statutory compliance requires resolution.